Garfield Voget v. Commissioner.
Voget v. Commissioner
Docket No. 19657.
United States Tax Court
1950 Tax Ct. Memo LEXIS 203; 9 T.C.M. (CCH) 394; T.C.M. (RIA) 50118; May 3, 1950
*203 Loss of investment in a mining venture sustained in 1944. William B. Murray, Esq., 825 Yeon Bldg., Portland, Ore., for the petitioner. Robert G. Harless, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding was instituted for the redetermination of a deficiency in income taxes for the calendar year 1944 in the amount of $5,349.74. The sole question before the Court is whether a loss in the amount of $15,400, which was sustained in connection with a transaction entered into for profit, was realized in the year 1944. Findings of Fact The petitioner is a resident of the State of Oregon, and filed his income tax return for 1944 with the collector of internal revenue for the district of Oregon. At the solicitation of one Phillip Suetter, petitioner became interested in 1941 in a gold mining venture then being conducted by Suetter under the name of the Gold Reef Mine near Yreka, California. As a result thereof, petitioner agreed to buy an interest in all of the interest held by Suetter in the Gold Reef Mine. Under date of November 12, 1941, petitioner entered into a written agreement with Suetter whereby petitioner was *204 to acquire an eight per cent interest in such interest as Suetter then had or would acquire in the mine and mining business. Between September 18, 1941, and February 3, 1942, petitioner paid to Suetter by check sums totaling $15,400. Under the terms of the written agreement between petitioner and Suetter, the latter was to have complete and full management and control of the mine and mining business and Suetter was authorized to sell the mine or business and was expressly empowered to do so if in his judgment he deemed it advisable. The Gold Reef Mine was owned by John Lewis and his wife, Lina Lewis, and on May 17, 1941, those persons deposited a deed to the mine, in escrow, with the Bank of America at Yreka, California, with instructions to deliver the deed to Suetter upon payment of the agreed purchase price. The purchase price was $19,000, of which $11,750 had been paid prior to the aforesaid deposit. The escrow instructions to the bank were modified under date of October 2, 1942, and were further modified in February, 1943. On April 28, 1948, the heirs of John Lewis and his wife, Lina Lewis, made demand upon the bank, as aforesaid, to return to them the deed held by the bank, *205 under escrow, and on May 27, 1948, the bank delivered the deed to the heirs pursuant to the demand and terminated the escrow. After causing the deed to be placed in escrow, Suetter acquired certain machinery and equipment and commenced operations. Development work was performed at the mine, but the mine was never developed to a point where ore was produced for shipment. On June 10, 1942, the Howard Cooper Corporation repossessed certain of the machinery and equipment then located at the mine, and which had been purchased by Suetter from that corporation. On July 24, 1942, Suetter commenced an action against the Howard Cooper Corporation for wrongful repossession of the personal property, and on February 15, 1943, he recovered a judgment in the action in the amount of $17,291, plus $55 in court costs. On May 27, 1943, the Howard Cooper Corporation abandoned its appeal from the judgment and on November 22, 1943, the judgment was paid and satisfied. Out of the proceeds of the judgment, the Collector of Internal Revenue for the District of Oregon, pursuant to lien and levy, collected $3,850.70 to apply against deficiencies in Federal taxes owed by Suetter; the balance thereof was assigned *206 by Suetter to his attorney, W. J. Prendergast, Jr. Suetter had promised petitioner that out of the proceeds he fully expected to recover from the Howard Cooper Corporation, he would pay petitioner "maybe not the whole investment but most all of it". On May 23, 1942, the grand jury of the United States District Court for the District of Oregon indicted Phillip Suetter for violations of Federal law, and on September 9, 1942, a jury found him guilty on four counts of the indictment. On October 19, 1942, two counts of the indictment were dismissed and a motion for a new trial on the two remaining counts having been denied on that date, Suetter was sentenced to serve two and one-half years in a Federal prison. After Suetter's conviction in the District Court for the District of Oregon, he told petitioner "not to worry about the criminal case; that he most likely would be cleared of it on appeal". On October 23, 1942, Suetter filed notice of appeal from the judgment of conviction to the Circuit Court of Appeals for the Ninth Circuit and on February 19, 1944, that Court, by mandate, affirmed the conviction. Suetter was committed to Federal prison on March 16, 1944, pursuant to sentence *207 and mandate, and was released on parole on November 26, 1945. Petitioner has never seen the Gold Reef Mine. He had some knowledge of the equipment placed thereon and knew that all or most of the equipment was owned by Suetter, subject to chattel mortgages. Petitioner also knew that at least five other persons had purchased an interest in this gold mining venture from Suetter. Petitioner did not discover that the judgment against the Howard Cooper Corporation had been paid until the first week of January, 1944, when he learned from Suetter that Suetter was negotiating with Prendergast, his attorney, and that Suetter expected almost any day to receive payment out of the money paid on the judgment. Petitioner believed himself entitled to repayment out of the funds paid in satisfaction of Suetter's judgment against the Howard Cooper Corporation for wrongful repossession of machinery because $7,000 of the money invested by petitioner with Suetter was furnished upon the express understanding that Suetter would pay it to the Howard Cooper Corporation towards the purchase of the machinery. It was not until the latter part of February, 1944, that petitioner learned from Suetter that the *208 latter had made an assignment of his judgment to his attorney and there would be no money available to pay petitioner. Just before going to prison, Suetter informed petitioner that as far as he, Suetter, was concerned, their investment in the mine was completely lost unless petitioner should make the payments to Lewis and his wife; that when Suetter should come back from prison, he would be penniless and would have no friends; that he would have to forfeit the property; that he had no chance to redeem it, and that Suetter considered their investment a total loss. Petitioner's investigation of Suetter's financial condition coincided with Suetter's own statement of his financial inability to go ahead with the escrow agreement. Just before Suetter went to prison in March, 1944, petitioner determined to abandon the investment inasmuch as he had only a one-eighth interest in the deal and did not have the time or the means to hold onto it. Petitioner's investment in the mining venture became worthless in 1944 and in that year he sustained a loss in the amount of $15,400. Opinion ARUNDELL, Judge: The parties are in agreement that petitioner suffered a loss in the amount of $15,400 *209 in a transaction entered into for profit, but respondent takes the view that the loss was not suffered in 1944. It is his contention that the loss occurred in some prior year but, should the Court disagree with this view, respondent contends that the loss must be regarded as sustained in 1948. This view is taken even though in the notice of deficiency respondent determined that the loss had occurred in 1944 but treated it as a non-business bad debt with the consequent limitation on the amount deductible. It has now been long established that the requirement that the loss be taken in the year in which it is sustained calls for a practical, not a legal, test. . The test to be applied also varies in the circumstances and we know of no better statement that points up this fact than that made by Mr. Justice Stone in the early case of , wherein he stated: "The statute was intended to apply not only to losses resulting from the physical destruction of articles of value but to those occurring in the operations of trade and business, where the business man has ventured *210 on a course of action in the reasonable expectation that the promised conduct of another will come to pass. Not only the future success of the business but its present solvency depends on the probable accuracy of his prophecy. Only when events prove the prophecy to have been false can it be said that he has suffered. His case is not like that of a man who fails to learn of the theft of his bonds or the burning of his house until a year after the occurrence, but rather resembles the position of a merchant who buys in one year, for sale in the next, merchandise which shifting fashion renders unsaleable in the latter. It may well be that he whose house has been burned has sustained a loss whether he knows it or not and may recover a tax paid in ignorance of that material fact. But we cannot say that the merchant whose action has been based not merely on ignorance of a fact but on faith in a prophecy - even though the prophecy is made without full knowledge of the facts - can claim to have sustained a loss before the future fails to justify his hopes." What the petitioner in this case acquired was an eight per cent interest in a gold mining venture. His rights were covered by contract *211 with Suetter. The latter did not have title to the mine but had made a substantial down payment and the deed was in escrow, to be delivered to him when the terms of the escrow were met. The machinery and equipment for operating the mine were in the name of Suetter. Petitioner had no title in either the real estate or the personal property. It was from Suetter's successful operation of the venture that petitioner expected to recover his capital and make his profit. When petitioner learned of Suetter's indictment and later conviction of a Federal offense, he was shaken in his confidence and suggested the return of his money althought the crime for which Suetter was convicted does not appear to have been connected with the mining venture. In June, 1942, when the Howard Cooper Corporation repossessed some of the mining equipment, Suetter advised petitioner of his intention to initiate suit against that company and promised a satisfactory settlement with petitioner from the proceeds he expected to recover. The suit was pressed and was successful. In February, 1943, judgment in the amount of $17,291, plus $55 court costs, was obtained and on November 22, 1943, the judgment was paid and *212 satisfied, but the tax collector and Suetter's lawyer, Prendergast, seem to have gotten this money and no part went to petitioner. In February, 1944, the Circuit Court of Appeals for the Ninth Circuit affirmed the judgment of conviction against Suetter and on March 16, 1944, the United States Marshal filed his return on the order of commitment showing that Phillip Suetter was committed to the Federal penitentiary at McNeil's Island, Washington. It was then definitely apparent that the venture was dead. Suetter no longer had hope that anything could be salvaged and so advised petitioner. The latter's interest in the venture was small and he was without the qualifications or means himself to take over the enterprise. It was at this time in 1944 that petitioner abandoned all hope and interest in the venture. If Suetter had been freed of the charges against him, something might have been salvaged. As pointed out by the Court in , it is "Only when events prove the prophecy to have been false can it be said that he has suffered." It is true things looked dark in 1942 and did not materially brighten in 1943, but it was in 1944 *213 that it was clear to any reasonable person that the game was up. We think the deduction should be allowed as claimed in 1944. Decision will be entered under Rule 50.